Smith, &c., v. Commonwealth.

|109  685
|f117  356
|e118  779|

CASE 100—INDICTMENT FOR INCEST—JAN 30.

# Smith, &c. v. Commonwealth.

APPEAL FROM LETCHER CIRCUIT COURT.

DEFENDANTS CONVICTED OF INCEST AND APPEAL.  REVERSED.

CRIMINAL LAW—IMPEACHMENT OF WITNESS—INCEST—PROOF OF SEP-
ARATE COMMISSIONS OF OFFENSE CHARGED—FAILURE TO INSTRUCT
JURY AS TO PURPOSE OF EVIDENCE.

Held:  1. Accused has the right to show not only that the general moral character of a witness for the prosecution is bad, but also that his general character for truth and veracity is bad.

2. Under an indictment for incest so general in its terms as to cover different occasions, the Commonwealth may show in support of it any commission of the offense before the finding of the indictment within the time allowed by the statute of limitations; but, where different commissions of the offense are in evidence, the Commonwealth must elect for which of them it will prosecute, and the court must then instruct the jury that evidence of other commissions of the offense can be considered only for the purpose of corroborating the testimony as to the principal offense.

3. Under such an indictment, the Commonwealth having proved an act of fornication between the parties in the month of September, 1897, evidence of a similar act in "the fall" of 1897 was sufficiently near in point of time to be admissible for the purpose of corroboration.

W. F. HALL, ATTORNEY FOR APPELLANTS.

In this case Lane Smith and Fanny Smith, brother and sister, have been indicted and convicted of incest. Two witnesses testify as to their guilt, but each witness tells of a separate act. The first witness is impeached, and the second one contradicted. The evidence of each is so unreasonable as to make it incredible.

1. We maintain that the evidence of the Commonwealth was insufficient to authorize the case going to the jury, and if this position is untenable then we say the court in its instructions to the jury should have cautioned the jury as to the weight to be given such testimony.

2. Only one witness was before the grand jury and the act testified to by him is the offense for which defendants are charged. The second witness testifies to a separate act occurring at a different time and place. This witness was intended by the Commonwealth to corroborate the first one, as each act is a distinct offense. The last witness was incompetent to testify until the first one had testified. For this reason the refusal of the court to give the instruction of caution to the jury asked by the defendants is a reversible error.

CLEM. J. WHITWORTH AND ROBT. J. BRECKENRIDGE FOR APPELLEE.

1. The offense is purely statutory and the instructions cover the law of the case. The exact day when, and the exact place where the offense was committed are not material to the indictment. Consequently, the trial judge was correct in refusing the instruction offered by appellant.

2. The jury are the judges of the sufficiency of the evidence and the credibility of the witnesses.

Smith, &c., v. Commonwealth. .

Opinion of the court by JUDGE HOBSON—Reversing.

Appellants, Lane Smith and Fanny Smith, were indicted
in the Letcher Circuit Court for the crime of incest. The
jury to whom the case was submitted returned a verdict
finding them guilty, and fixing their punishment at con-
finement in the penitentiary for two years. Kentucky
Statutes, section 1219. The only witnesses on whose tes-
timony the conviction rests are Solomon Holcomb and
Ferriby Frazier. . Holcomb testified that in the month
of September, 1897, he was working in a clearing for John
Smith, the father of appellants, near his house, and at noon
took dinner there; that after dinner appellants, Fanny
and Lane, stepped out of the house; that he heard some
sort of noise, and went out at the door, slipped to the cor-
ner of the house, and peeped around; that he then 'saw
Fanny standing up against the house, and Lane had her
clothes up, cohabiting with her; that the house was a
a log house, with large cracks through the walls where
they were standing, and they could have been seen on the
outside by one on the inside sticking his head out through
the hole. He had a scar on his face at the time of the
trial, the result of a difficulty between him and appellant
Lane in the fall of the year 1898. Soon after this diffi-
culty, he went before the grand jury and swore out the
indictment in question. At the time of the alleged crime,
Fanny was thirteen years old and Lane something over
a year older. Ferriby Frazier stated that she was out
getting sang in the mountains about four miles from where
appellants lived in the fall of 1897; that she saw a dog
barking, and she went across the point to see whose dog
it was, and then saw appellants down in the hollow having
carnal intercourse. This witness was not before the grand
jury, and shortly before the trial of the case she had said

that she was expecting to be summoned as a witness for the Commonwealth in this case, that she did not know a thing in the world about the case, and that she never in her life saw any harm of the appellants. She testified that she said nothing about what she saw for two years afterwards, and it was shown that she, too, had fallen out with the appellant, Lane. A number of other witnesses were introduced on the trial, but none of them had ever seen or heard an act or word improper between the brother and his little sister. Appellants introduced a number of witnesses by whom they proved that they were acquainted with the general moral character of the witness Soloman Holcomb, and that it was bad. They then offered to show that his general character for truth or veracity was bad, to which the Commonwealth objected, and the court sustained the objection, and excluded the evidence. This was error. The appellants had a right not only to show that the general moral character of the witness among his neighbors and acquaintances was bad, but they had also the right to show that his general character for truthfulness was also bad, and evidence on this point might have had great weight with the jury. Appellants both testified positively that the statement of Holcomb was wholly untrue and without foundation, and the proof introduced by them tended to show that Holcomb was not at their house at the time referred to. His statement was so unreasonable that, if his general character for truthfulness had been impeached, it is hard to see how the jury could have found the verdict against them. Appellants also testified that they were never in their lives at the place referred to by Ferriby Frazier, and denied positively all the facts she testified to; and under all the proof her testimony is but little less incredible

than Holcomb's. It is insisted for appellants that her testimony should have been exclueded, as it showed, if true, a separate offense, and that the Commonwealth should have been confined in its proof to one offense. In Bish. St. Crimes, section 731, it is said that incest, being a particular form of fornication or adultery, is governed usually by the same principles; and in section 680, in discussing adultery, the rule is thus stated: "Where the attempt is to prove adultery at a particular time and place, familiarities between the same parties tending thereto, or adultery itself at a prior time, and in another or the same place, may be shown in aid of the conclusion; and within familiar principles it is no objection that another crime than the one charged is also made to appear." And in section 682, after showing that the evidence is admitted on the presumption that an adulterous disposition once existing between two persons will continue, the author says: "The limit, practically, to the evidence under consideration is that it must be sufficiently significant in character and sufficiently near in point of time to have a tendency to lead the guarded discretion of a reasonable and just man to a belief in the existence of the important element in the fact to be proved. If too remote or insignificant, it will be rejected in the discretion of the judge who tries the case." The evidence of Ferriby Frazier appears to have been sufficiently near in point of time to be admissible under this rule.

It is also insisted for appellants that the court should have given the jury an instruction asked by them to the effect that the evidence of Ferriby Frazier could only be considered as corroborating the testimony of Holcomb. The indictment did not identify the particular act

of carnal knowledge between the parties upon which it was based, except by the date on which it was alleged to have been done, and by the express provision of the Code the time alleged in the indictment is not material, and need not be proved as laid. The rule seems to be well settled in this State that in cases of this character an indictment following the statute is sufficient, though its terms are so general as to cover different occasions, and that the Commonwealth may show in support of it any commission of the offense before the finding of the indictment and within the time allowed by the statute of limitations. But this rule is never to be allowed to operate to the prejudice of the defendant, or to catch him in a trap. The indictment here is for felony, and not a misdemeanor. The Commonwealth had a right to prosecute the appellants for either of the alleged offenses shown by the proof; but it could not prosecute them for two felonies under the indictment which charged only one offense. The court should have given the instruction asked by appellants, unless the Commonwealth elected to prosecute the case as to the offense testified to by Ferriby Frazier; and in that event a similar instruction should have been given as to the testimony of Soloman Holcomb. Evidence of conduct from which undue intimacy might be inferred is admissible only in corroboration of the testimony relating to the commission of the offense. When this testimony is weak, and does not show a separate offense committed, it is clearly admissible; and when it is stronger, and tends more clearly to the same result, it is equally admissible, though establishing the commission of another offense; but it is still admissible only for the same purpose, and the Commonwealth, under the guise of corroborating its main testimony, should not be allowed to prove a number

of separate felonies, and then submit them all to the jury to catch the defendant in a dragnet of many offenses, when, by the indictment against him, he has been informed of only one charge; for thus part of the jury would be permitted to convict him for one felony and part for another. In Roberson, Cr. Law, section 713, it is said: "So acts of sexual intercourse both before and after the commission of the offense charged are admissible in evidence against them, although it proves other and distinct offenses, and although the former acts, if treated as an offense, would be barred by the statute of limitations. Evidence of this character would not, however, be admissible as independent testimony, but should be received only when proposed in connection with or subsequently to the introduction of evidence tending to establish an improper intercourse between the parties during the period to which the charge is confined." In 1 Am. & Eng. Enc. Law, page 753, the general rule as to the admissibility of this evidence is stated as above, and then, in a note, this is added: "But when evidence of other acts is admitted in corroboration of the more direct evidence of the offense charged, the court should, by instructions to the jury, limit such evidence to its proper purpose, and thereby guard against the conviction of the defendant for such acts instead of the act charged." By section 126 of the Criminal Code of Practice it is provided that an indictment, except in certain cases not material here, must charge but one offense; by section 165 a demurrer is proper if more than one offense is charged in the indictment; and by section 168, if the indictment improperly charges more than one offense, the Commonwealth's attorney must elect which he will prosecute. These provisions of the statute would amount to nothing if the Commonwealth were al-

lowed under an indictment charging one offense to put
the defendant on trial for two or more felonies which
were entirely distinct. In 1 Bish. Cr. Proc., section 454,
the learned author says: "The doctrine of this chapter
is that, since the prosecuting officer has drawn the indict-
ment and planned the evidence after his own pleasure,
with no opportunity for the defendant to object, the judge
at the trial will so restrict this officer in respect both of
the allegations and proofs as, by compelling him to choose
between two or more otherwise permissible lines of at-
tack, to avoid confusion and injustice to the defense."
Then, after showing that a more strict rule applies in fel-
onies than in misdemeanors, he thus states the rule as to
felonies in section 459: "Already we have seen that where
the law permits but one transaction or offense to be set
out in a single indictment, whether in one count or more
than one, the prosecuting officer will be compelled to
choose the transaction on which he will ask for a verdict,
and will be denied the introduction of evidence not rele-
vant thereto. This, for example, occurs under the English
rule, which restricts the indictment for felony to one
transaction. Should 'the prosecutor,' said Tindal, C. J.,
'offer evidence tending to prove two distinct charges of
felony, he would be stopped immediately by the presiding
judge and directed to make his election upon which single
charge of felony he intended to proceed.'" Again, in sec-
tion 461, he says: "If the record does not alone show an
occasion for election, the trial must proceed till such oc-
casion appears; and then, or after further steps before
the reason for it has ceased, the motion to compel the
election should be made and the decision rendered there-
on." In concluding the subject, in section 462, he says:
"It is believed that in most cases justice is best promoted

where the judge permits the witnesses to go far enough to identify a transaction before compelling the election. What is chiefly to be avoided while the evidence for the State is being introduced is to prevent the defendant being prejudiced with the jury by testimony indicating crimes for which he is not indicted, and to which he is not to answer. But, whatever is done at the early stages of the trial plainly, as a general rule, the election should be required before the prisoner opens his defense." The same doctrine is stated in Freeman's note to State v. Bell, 92 Am. Dec., 658. On page 663 this is said: "When two or more distinct offenses occurring at different times are joined in one indictment, it is proper to compel the prosecutor to elect upon which count he will proceed. Young v. Rex, 3 Term R., 106; Reg. v. Barry, 4 Fost. & F., 389. Thus, when the prisoner fired at a person, and fifteen minutes afterwards, after he had gone to another place, fired at him again, there were two offenses; and the State, it was held, should be put to an election. Williams v. State, 77 Ala., 53. But where the prisoner fired at another's mules, and three minutes afterwards fired again, this was one offense only. Busby v. State, 77 Ala., 66. But where an indictment for incest contained a count charging the crime to have been committed April 1, 1884, and another count charging it to have been committed April 1, 1882, and on divers other days between the two dates, the prosecution, it was held, should be compelled to elect. State v. Lawrence, 19 Neb., 307, (27 N. W., 126.)" The rule announced by these authorities seems to us sound, and to be in accord with the provisions of our Code of Practice, above referred to. The court below should have conformed to it on the trial of this case. The court should also have

excluded the evidence of Soloman Holcomb to the effect that some of appellants' friends had hired him and paid him money to stay from court. Judgment reversed, and cause remanded, with directions to grant appellants a new trial, and for further proceedings consistent with this opinion.